UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

WANDA HOLLIDAY                                                        CIVIL ACTION

VERSUS

U.S. BANK, NAT'L ASS'N, ET AL.                              NO. 22-00194-BAJ-RLB

### RULING AND ORDER

Before the Court are separate motions to dismiss submitted by Defendants U.S. Bank, National Association (Doc. 31), and TransUnion, LLC (Doc. 32), each seeking dismissal of Plaintiff's second amended complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). Also before the Court is U.S. Bank's initial Motion to Dismiss Plaintiff's original complaint. (Doc. 22).

Plaintiff opposes the motions seeking to dismiss her second amended complaint. (Docs. 39, 40). Defendants each filed replies to Plaintiff's oppositions and in support of their motions. (Docs. 43, 44).

For reasons to follow, Defendants' motions will each be **DENIED**.

### I. FACTUAL BACKGROUND

This dispute arises from Plaintiff Wanda Holliday's allegations that Defendants wrongfully reported and disseminated false information regarding Plaintiff's credit under the Fair Credit Reporting Act. The allegations relevant to Plaintiff's claims—which the Court accepts as true for present purposes—are as follows:

Plaintiff opened an account with U.S. Bank on September 28, 2004. (Doc. 28, ¶ 16). On or about December 31, 2018, Plaintiff received a 1099-C form from U.S. Bank notifying her that an alleged debt of $22,219.00 on the account was discharged and cancelled. (Doc. 28, ¶ 18). The 1099-C form she received was entitled "CANCELLATION OF DEBT" and included the Event Code "G," which is used by the IRS "to identify cancellation of debt as a result of a decision or defined policy of the creditor to discontinue collection activity and cancel the debt." (Doc. 28, ¶¶ 23, 24). As a result, Plaintiff listed the $22,219 cancelled debt on her 2018 tax returns as taxable income, and paid thousands of dollars in taxes as a result. (Doc. 28, ¶ 19).

Later, however, Plaintiff discovered that the credit bureaus continued to report that she owes the $22,219 debt to U.S. Bank. (Doc. 28, ¶ 21). On October 21, 2021, during a phone call, U.S. Bank confirmed to Plaintiff that the bank was no longer attempting to collect any balance on the account. (Doc. 28, ¶ 20). Plaintiff disputed the information with the credit bureaus, including Equifax, TransUnion, and Experian, on or around October 25, 2021. (Doc. 28, ¶ 22).

As alleged by Plaintiff, Transunion was required, under the Fair Credit Reporting Act ("FCRA"), to investigate the disputed information and provide Plaintiff with the results of its investigation. (Doc. 28, ¶ 25). TransUnion received Plaintiff's dispute letter on November 1, 2021, and did not investigate the dispute or otherwise respond. (Doc. 28, ¶ 27). Upon Plaintiff's information and belief, U.S. Bank received copies of the dispute letters Plaintiff sent to the credit bureaus, along with a copy of the 1099-C form. (Doc. 28, ¶ 31).

Within Plaintiff's second amended complaint, relevant to the instant motions to dismiss, counts five through seven relate to Defendants U.S. Bank and TransUnion. (*See* Doc. 28, ¶¶ 58–82). Plaintiff alleges that U.S. Bank failed to investigate her dispute under the requirements of the FCRA and that TransUnion violated the provisions of the FCRA and failed to assure the maximum possible accuracy of her information. (*See* Doc. 28, ¶¶ 58–82). Plaintiff alleges that her credit score has dropped due to Defendants' misconduct, making it more difficult to obtain credit, and even causing her to be denied a loan to purchase a vehicle. (Doc. 28, ¶ 34).

## II. PROCEDURAL HISTORY

Plaintiff filed suit on March 22, 2022. (Doc. 1). Defendant U.S. Bank filed its first motion to dismiss on May 12, 2022. (Doc. 22). On June 2, 2022, Plaintiff amended her complaint. (Doc. 25). On June 7, 2022, Plaintiff amended her complaint for a second time. (Doc. 28).

U.S. Bank then filed a motion to dismiss Plaintiff's second amended complaint on June 21, 2022, (Doc. 31), as did TransUnion, (Doc. 32). On July 8, 2022, Plaintiff filed her opposition to the motions to dismiss her second amended complaint (Docs. 39, 40). U.S. Bank replied to Plaintiff's opposition on July 22, 2023, (Doc. 43), and TransUnion replied in support of its motion the following day. (Doc. 44).

For reasons set forth below, Defendants' motions will be denied.

## III. DISCUSSION

### A. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Federal Rule of Civil Procedure 8, which

3

requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court "accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

### B. Discussion

Guided by these principles, the Court easily determines that Plaintiff's second amended complaint clearly meets the necessary threshold to survive Defendants' motions to dismiss.

#### 1. Claim Against U.S. Bank

15 U.S.C. § 1681s-2(b) requires that furnishers of information—like U.S.

4

Bank—after receiving notice regarding the completeness or accuracy of the information provided by a person to a consumer reporting agency, must investigate and report the results to the agency. To state a claim against U.S. Bank under § 1681s-2(b), Plaintiff must show that: "(1) [she] disputed the accuracy or completeness of information with a consumer reporting agency; (2) the agency notified the furnisher of the consumer's dispute; (3) and the furnisher failed to conduct an investigation, correct any inaccuracies, or notify the agency of the results of the investigation." *Shaunfield v. Experian Info. Sols., Inc.*, 991 F. Supp. 2d 786, 805 (N.D. Tex. 2014).

Here, Plaintiff has sufficiently pleaded all the necessary elements. She has alleged that, in October 2021, she disputed the accuracy of the $22,219 debt reported by U.S. Bank to the credit bureaus. (Doc. 28, ¶ 72). Further, she has alleged that notice was provided to U.S. Bank by at least one of the credit bureaus that she disputed the debt. (Doc. 28, ¶ 74). And finally, she alleges that U.S. Bank refused to reasonably investigate the dispute and continued to inaccurately report that Plaintiff had owed a balance on her account, even after confirming to Plaintiff on the phone that the bank was no longer attempting to collect any balance. (Doc. 28, ¶¶ 76–78).

U.S. Bank argues that Plaintiff's claim must be dismissed for several reasons. First, U.S. Bank asserts that, to state a claim under § 1681s-2(b), Plaintiff must also show that the information provided by the furnisher to the credit reporting agency was inaccurate. (*See* Doc. 31-1, pp. 3–4 (citing *Ostiguy v. Equifax Info Servs., LLC*, No. 5:16-CV-790-DAE, 2017 WL 1842947, at *5 (W.D. Tex. May 4, 2017), *aff'd* 738 F. App'x 281 (5th Cir. 2018)). The mere issuance of a Form 1099-C, U.S. Bank argues,

does not extinguish a debt or relieve the debtor of liability. (Doc. 31-1, pp. 4–5). While a Form 1099-C, standing alone, may not be sufficient to establish a discharge of a debt, *see Owens v. Comm'r of Internal Revenue*, 67 Fed. App'x 253 (5th Cir. 2003), neither party has offered, nor is the Court aware of, any binding, germane precedent establishing such a bright line rule.

Even still, Plaintiff has alleged more than the mere issuance of a Form 1099-C as proof of the debt discharge. Here, Plaintiff has pleaded that she received a Form 1099-C entitled "CANCELLATION OF DEBT," marked with the Event Code "G," signifying "cancellation of debt as a result of a decision or defined policy of the creditor to discontinue collection activity and cancel the debt." (Doc. 28, ¶¶ 23, 24). In addition, Plaintiff alleges that on October 21, 2021, U.S. Bank confirmed to Plaintiff via phone that the bank was no longer attempting to collect any balance on the account. (Doc. 28, ¶ 20). However, Plaintiff discovered that the credit bureaus continued to report that she owed the balance to U.S. Bank. (Doc. 28, ¶ 21). The determination of whether U.S. Bank truly discharged the debt is ripe for discovery.

U.S. Bank also argues that Plaintiff has not alleged sufficient facts regarding U.S. Bank's failure to investigate Plaintiff's dispute. (Doc. 31-1, pp. 6–7). However, at this stage of the litigation, this argument fails. Plaintiff alleges that she disputed the information with each of the credit bureaus on or around October 25, 2021, and that the credit bureaus relayed that information—as they are required to do—to U.S. Bank. (*See* Doc. 28, ¶¶ 18, 22, 23, 31, 73, 74). However, U.S. Bank continued to report the alleged inaccurate balance, even after confirming to Plaintiff over the phone four

6

days before Plaintiff contacted U.S. Bank to dispute that no balance was currently being sought by the bank. (*See* Doc. 28, ¶¶ 20, 77). Discovery will shed light on whether U.S. Bank sufficiently investigated Plaintiff's dispute.

Finally, U.S. Bank argues that Plaintiff's conclusory and unsupported allegations fail to show that U.S. Bank willfully violated the FCRA. (Doc. 31-1, p. 7). This argument, too, fails.

"Willfulness" within the FCRA covers both "knowing" *and* "reckless" violations. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56–58 (2007). A reckless disregard can be described as "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 68.

Based on Plaintiff's allegations, in 2018, U.S. Bank issued a Form 1099-C to Plaintiff which extinguished her $22,219.00 debt. (Doc. 28, ¶ 18). When Plaintiff spoke with a U.S. Bank representative on the phone about the cancelled debt, the representative confirmed that the bank was no longer seeking payment on the balance. (Doc. 28, ¶ 20). Yet, U.S. Bank continued to report to credit bureaus that Plaintiff owed the balance of the debt. (Doc. 28, ¶ 21). Plaintiff has sufficiently alleged that U.S. Bank willfully violated the relevant provisions of the FCRA.

### 2. Claims Against TransUnion

Plaintiff brings two claims against TransUnion in her second amended complaint: that TransUnion (1) violated the FCRA, and (2) failed to assure the maximum possible accuracy of Plaintiff's information. (Doc. 28, ¶¶ 58–69). Plaintiff has sufficiently pleaded allegations under both claims to survive TransUnion's

motion to dismiss.[1]

First, Plaintiff alleges that, after properly disputing her credit information with TransUnion in October 2021, the credit bureau was required to investigate her claims. (Doc. 28, ¶¶ 61–64). However, TransUnion did not respond to her dispute nor, seemingly, conduct an investigation. (Doc. 28, ¶¶ 63–64).

As to Plaintiff's second claim against TransUnion, 15 U.S.C. § 1681e(b) requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." While TransUnion argues that "[n]either the failure to correct alleged errors after receiving notification of an alleged inaccuracy in a consumer's file, nor the mere existence of inaccuracies in a consumer's report alone, can amount to willful compliance with the FCRA," (Doc. 32-1, p. 3), Plaintiff does not rely *merely* on the notification of an alleged inaccuracy nor the existence of the alleged inaccuracies in the report. Plaintiff also relies on the inconsistent information provided by U.S. Bank as well as TransUnion's failure to respond to the dispute. (Doc. 28, ¶¶ 17–25, 27). The Court denies TransUnion's request to dismiss Plaintiff's claim on these grounds.

As a final matter, the Court denies Defendant U.S. Bank's first motion to dismiss, (Doc. 22), as moot, because the motion sought to dismiss Plaintiff's original complaint, which is superseded by Plaintiff's operative amended complaint.

---

[1] In addition to advancing its own arguments for dismissal, TransUnion joins U.S. Bank's arguments. The Court addresses TransUnion's independent arguments below. TransUnion's motion is denied to the extent TransUnion joins U.S. Bank's arguments, for the same reasons set forth above.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant U.S. Bank's **Motion To Dismiss Pursuant To 12(B)(6) (Doc. 31)** be and is hereby **DENIED**.

**IT IS FURTHER ORDERED** that and Defendant TransUnion's **Motion To Join In U.S. Bank, National Association's Motion And Incorporated Memorandum In Support To Dismiss Pursuant To 12(b)(6) (Doc. 32)** be and is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant U.S. Bank's **Motion To Dismiss Pursuant To 12(B)(6) (Doc. 22)** be and is hereby **DENIED AS MOOT**.

Baton Rouge, Louisiana, this 16th day of March, 2023

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**